No. 24-5856

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

## CHRISTOPHER DARNELL,
**Plaintiff**
and

## DANIEL T. LEWIS; SAMANTHA ZUKOWSKI; CHARLES TRAYAL; LIBERTARIAN PARTY OF TENNESSEE,

**Plaintiffs – Appellants**

v.

## TRE HARGETT, in his official capacity as Secretary of State for the State of Tennessee; MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee

**Defendants – Appellees**

_____

**On Appeal from the United States District Court**
**For the Middle District of Tennessee, Nashville Division**

**Honorable Aleta A. Trauger, District Judge**
**D.C. No. 3:23-cv-01266**

_____

## APPELLANTS' PRINCIPAL BRIEF

_____

**JAMES C. LINGER**
**1710 South Boston Avenue**
**Tulsa, Oklahoma 74119-4810**
**Tel.: (918) 585-2797**
bostonbarristers@tulsacoxmail.com

*Counsel for Appellants*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to Fed. R. App. P. 26.1 and 6th Cir. R. 26.1, Counsel for Plaintiffs-Appellants certifies that no party to this appeal is a subsidiary or an affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in its outcome.

**TABLE OF CONTENTS**

DISCLOSURE OF CORPORATE AFFILIATIONS AND
FINANCIAL INTEREST………………….…...…………………………… i

TABLE OF CONTENTS ……………………………………………………. ii

TABLE OF AUTHORITIES …………………………………………… v

JURISDICTIONAL STATEMENT …………………………………….. 1

ISSUES PRESENTED ……………………………………………….. 1

STATEMENT OF THE CASE ………………………………………… 3

     I. Course of the Proceeding and Disposition in the Court below……….. 3

     II. Statement of the Facts Relevant to the Issues Submitted for Review….5

SUMMARY OF THE ARGUMENT …………………………………... 7

ARGUMENT ………………………………………………………… 9

I.      THE DISTRICT COURT ERRED IN GRANTING THE DEFENDANTS'
     MOTION TO DISMISS AGAINST PLAINTIFFS BECAUSE
     TENNESSEE'S CHALLENGED BALLOT ACCESS LAWS FOR
     NEW POLITICAL PARTY RECOGNITION ARE A SEVERE
     BURDEN UPON THE CONSTITUTIONAL RIGHTS OF
     PLAINTIFFS BECAUSE THE PETITION REQUIREMENT HAS
     NOT BEEN COMPLIED WITH SO AS TO RESULT IN A NEW
     POLITICAL PARTY OBTAINING BALLOT ACCESS AS A
     POLITICAL PARTY IN TENNESSEE SINCE 1968, BECAUSE
     THE BALLOT ACCESS LAWS CAUSE VOTER CONFUSION,
     ARE NOT NARROWLY DRAWN TO ADVANCE COMPELLING
     STATE INTERESTS AND BECAUSE OF THE PASSAGE OF TIME
     AND THE DIFFERING EFFORTS OF THE LIBERTARIAN PARTY
     OF TENNESSEE FOR BALLOT ACCESS SO AS TO DISTINGUISH IT
     FROM THE PREVIOUS DECISIONS OF THE U.S. COURT OF

APPEALS FOR THE SIXTH CIRCUIT IN THE VARIOUS GREEN PARTY OF TENNESSEE V. HARGETT CASES, AND BECAUSE PLAINTIFFS HAD INDICATED THAT THEIR ATTEMPTS TO SUCCESSFULLY GAIN BALLOT ACCESS HAD BEEN UNSUCCESSFUL AND THE DISTRICT COURT BY GRANTING THE MOTION TO DISMISS DID NOT ALLOW THE RECORD TO BE DEVELOPED BECAUSE PLAINTIFFS HAD ALLEGED THAT THEY HAD FAILED IN EFFORTS IN THE PAST TO COMPLY WITH THE TENNESSEE LAWS FOR RECOGNITION OF NEW POLIUTICAL PARTIES AS SET FORTH IN PARAGRAPH VIII OF THE COMPLAINT ………………………………………………………………... 9

A.    Standard of Review …………………………………………...10

B.    Tennessee's challenged ballot access laws for new political party recognition are a severe burden upon the Constitutional rights of Plaintiffs because the petition requirement has not been complied with so as to result in a new political party obtaining ballot access as a political party in Tennessee since 1968…………………………  11

C.    Tennessee's challenged ballot access laws for new political party recognition cause voter confusion and are not narrowly drawn to advance compelling state interest……………………………….. 16

D.    Because of the passage of time and the differing efforts of the Libertarian Party of Tennessee for ballot access, the instant case is distinguished from the previous decisions of the U.S. Court of Appeals for the Sixth Circuit in the various Green Party of Tennessee v. Hargett cases…………..…………………………  19

E.    The District Court by granting the Motion to Dismiss did not allow the record to be developed because the Plaintiffs had alleged that they have failed in efforts in the past to comply with Tennessee laws for the recognition of new political parties as set forth in Paragraph VIII of the Complaint.  ...…… ………………. 22

CONCLUSION ……………………………………………………………… 26

iii

STATEMENT OF RELATED CASES ……………………………………. 27

CERTIFICATE OF COMPLIANCE ……………………………………. 27

CERTIFICATE OF SERVICE …………………………………………….. 28

ADDENDUM

    Designation of Documents……………………………………………. 29

# TABLE OF AUTHORITIES

## CASES

Cases:

American Party of Texas v. White, 415 U.S. 767 (1974) ………………12,n2,13,14,16

Anderson v. Celebrezze, 460 U.S. 780 (1983) …………………………..8,13,14,15,18

Anderson v. Celebrezze, 499 F.Supp. 121 (S.D. Ohio 1980) ……………………….13

Ashcroft v. Iqbal, 556 U.S. 662 (2009)…………………………………………..10,11

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ……………………………8,11

Burdick v. Takushi, 504 U.S. 428 (1992) ……………………………………… 15

Clingman v. Beaver, 544 U.S. 581 (2005) ………………………………………15

Conley v. Gibson, 355 U.S. 41 (1957) …………………………………………….. 8

Council of Alternative Political Parties v. Hooks, 121 F.3d 876
    (3rd Cir. 1997) ……………………………………………………………….22

Doe v. Baum, 903 F.3d 575 (6th Cir. 2018) ………………………………………10

Dunn v. Blumstein, 405 U.S. 330 (1972) …………………………………………...23

Graveline v. Benson, 992 F.3d 524 (6th Cir. 2021) …………………….16,17,n3,18,21,
                                                                                              22,25,26

Graveline v. Johnson, 747 F.App'x 408 (6th Cir. 2018)……………………………17

Graveline v. Johnson, 336 F.Supp. 3d, 801 (E.D. Mich. 2018)……………………17

Green Party of Tennessee v. Hargett, 882 F.Supp. 2d, 959 (M.D. Tenn. 2012)……. 1

Green Party of Tennessee v. Hargett, 700 F.3d 816 (6th Cir. 2012) ………………. 1

Green Party of Tennessee v. Hargett, 953 F.Supp. 2d 816 (M.D. Tenn. 2013)……. 1

Green Party of Tennessee v. Hargett, 767 F.3d 533 (6th Cir. 2014) …………..1,19,21

Green Party of Tennessee v. Hargett, 791 F.3d 684 (6th Cir. 2015)……………... 1,n1,25

Green Party of Tennessee v. Hargett, 2016 WL 4379150
(M.D. Tenn. 2016)……………………………………………………..1,2,20,21,25

Green Party of Tennessee v. Hargett, 2017 WL 4011854
(6th Cir., May 11, 2017) …………………………………………………2,20,21,25

Illinois State Board of Elections v. Socialist Workers Party,
440 U.S. 173 (1979)……………………………………………………16,22,23

Kelson v. City of Springfield, 767 F.2d 651 (9th Cir. 1985) ………………………… 10

Kusper v. Pontikes, 414 U.S. 51 (1973) …………………………………………..22,23

Libertarian Party of Ohio v. Blackwell, 462 F.3d 579 (6th Cir. 2006) ………………..15

Libertarian Party of Tennessee v. Goins, 793 F.Supp. 2d, 1064
(M.D. Tenn. 2010)……………………………………………………………….21,n5

Logsdon v. Hains, 492 F.3d 334 (6th Cir. 2007) ……………………………………..10

Lubin v. Panish, 415 U.S. 709 (1974) ………………………………………………16,22

Lugan v. Defenders of Wildlife, 504 U.S. 555 (1992) ……………………………...11

Lugan v. National Wildlife Federation, 497 U.S. 871 (1990) ……………………… 11

Mandel v. Bradley, 432 U.S. 173 (1977) …………………………………………….23

McLain v. Meier, 637 F.2d 1159 (8th Cir. 1980) …………………..…………13,16,18,24.25

Norman v. Reed, 502 U.S. 279 (1992) …………………………………………… 15

Saylor v. Parker Seal Co., 975 F.2d 252 (6th Cir. 1992) …………………………….. 10

Shelton v. Tucker, 364 U.S. 479 (1960) …………………………………………………23

Storer v. Brown, 415 U.S. 724 (1974) ………………………………..13,14,20,21,23,24

Williams v. Rhodes, 393 U.S. 23 (1968) …………………………………………… 16,22,23

Statutes and Code:

Tenn. Code Ann. § 2-1-104(a)(14)……………………………………………  3,5

Tenn Code Ann., § 2-1-104(a)(23) …………………………………………… 3,5

Tenn. Code Ann., § 2-1-104(a)(30) ………………………………………… 3,5

Tenn. Code Ann. § 2-1-114………………………………………………..3,n1,5,6

Tenn. Code Ann. § 2-5-208(d)(1) ………………………………………… 3,6

Tenn. Code Ann. § 2-13-107(a)(2) ……………………………………….. 3,6

Tenn. Code Ann. § 2-13-107(e)(2) ……………………………..………….. 3,6,18,19

Tenn. Code Ann. § 2-13-201(1)………………………………………………3,6

U.S.C., Title 28, § 1291 ……………………………………………………… 1

U.S.C., Title 28, § 1331 ……………………………………………………… 1

U.S.C., Title 28, § 2201 ……………………………………………………… 1

U.S.C., Title 28, § 2202 ……………………………………………………… 1

U.S.C., Title 42, § 1983 ……………………………………………………1,7

Other Authorities:

Fed. R. Civ. P. 12(b)(6)...………………………………………………………4,7

Fed. R. Civ. P. 25(a)(2) ……………………………………………………… 4

U.S. Constitution, Amendment I ………………………………………………… 7

U.S. Constitution, Amendment XIV………………………………….................. 7

## JURISDICTIONAL STATEMENT

The jurisdiction of the District Court below was invoked pursuant to Title 28, United States Code, §§ 1331, 2201, and 2202, and Title 42, United States Code, § 1983. The Memorandum Opinion, Order, and Judgment appealed from were filed in the District Court below on August 23, 2024 (RE 20, Page ID # 81-92; RE 21, Page ID # 93; RE 22, Page ID # 94, respectively), and Plaintiffs-Appellants filed their Notice of Appeal on September 19, 2024 (RE 23, Page ID # 95-96). Jurisdiction of the Court of Appeals is invoked pursuant to Title 28, United States Code, § 1291.

## ISSUES PRESENTED

This appeal presents issues concerning whether the District Court below properly applied the standard of review in deciding a motion to dismiss or misunderstood the distinctions and implications of the case at bar with the Sixth Circuit's decisions in the various *Green Party of Tennessee v. Hargett* cases, *viz.*: *Green Party of Tennessee v. Hargett*, 882 F.Supp.2d 959 (M.D. Tenn. 2012), *rev'd., Green Party of Tennessee v. Hargett*, 700 F.3d 816 (6th Cir. 2012); *Green Party of Tennessee v. Hargett*, 953 F.Supp.2d 816 (M.D. Tenn. 2013), *vacated and remanded, Green Party of Tennessee v. Hargett*, 767 F.3d 533 (6th Cir. 2014); *Green Party of Tennessee v. Hargett*, 791 F.3d 684 (6th Cir. 2015); *Green Party of*

1

*Tennessee v. Hargett*, 2016 WL 4379150 (M.D. Tenn. 2016); and *Green Party of Tennessee v. Hargett*, 2017 WL 4011854 (6th Cir., May 11, 2017).  These issues are:

Issue 1:  Whether the District Court erred in granting the Defendants' Motion to Dismiss against Plaintiffs because Tennessee's challenged ballot access laws for new minor political party recognition are a severe burden upon the Constitutional rights of Plaintiffs because the petition requirement has not been complied with so as to result in a new minor political party obtaining ballot access as a political party in Tennessee since 1968, because the ballot access laws cause voter confusion, are not narrowly drawn to advance compelling state interests, and because of the passage of time and the differing efforts of the Libertarian Party of Tennessee for ballot access so as to distinguish it from the previous decisions of the U.S. Court of Appeals for the Sixth Circuit in the various *Green Party of Tennessee v. Hargett* cases, and because Plaintiffs had indicated that their attempts to successfully gain ballot access had been unsuccessful and the District Court by granting the Motion to Dismiss did not allow the record to be developed because Plaintiffs had alleged that they have failed in efforts in the past to comply with the Tennessee laws for the recognition of new political parties as noted in paragraph VIII of the Complaint.  (RE 1, Page ID # 1-10).

## STATEMENT OF THE CASE

I.     Course of the Proceeding and Disposition in the Court below.

Plaintiffs sought declaratory and injunctive relief from the Court.  Plaintiffs specifically sought to have Tenn. Code Ann., §§ 2-1-104(a)(14); 2-1-104(a)(23); 2-1-104(a)(30); 2-1-114;[1] 2-5-208(d)(1); 2-13-107(a)(2); 2-13-107(e)(2); and 2-13-201(1) on their face and as applied to the Plaintiffs herein for the 2024 Tennessee General Election and all subsequent general elections in Tennessee and the facts and circumstances relating thereto, declared unconstitutional, and also requesting injunctive relief either placing the Libertarian Party of Tennessee (hereinafter sometimes referred to as "LPT") on the Tennessee ballot for the next General Election after a sufficient showing of support having been made by way of a constitutionally reasonable level of required petitioning political support or an alternative requirement of petitioning similar to that required of independent candidates.

The Plaintiffs/Appellants, who are individual Tennessee voters and the LPT, filed their complaint on December 1, 2023 (RE 1, Page ID # 1-10), involving a ballot access lawsuit challenging the requirements in Tennessee for recognition of

_____

[1] Subsection (1) of § 2-1-114 was held unconstitutional in 2015. *Green Party of Tennessee v. Hargett*, 791 F.3d 684, at 696 (6th Cir. 2015). However, the Tennessee Legislature has not yet repealed or modified said subsection.

a new political party which requires a petition filing deadline, a time period to collect petition signatures for the current election year, and a total number of valid petition signatures of registered Tennessee voters equal to 2.5% of the total votes cast for Governor in the most recent gubernatorial election in Tennessee (viz.: 43,498).

Appellees/Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6) or show an injury fairly traceable to the conduct of the Defendants Secretary of State and Coordinator of Elections that could be redressed by a favorable decision on January 30, 2024 (RE 11, Page ID # 28-30), along with a memorandum of law in support of motion to dismiss for failure to state a claim (RE 12, Page ID # 31-45). Thereafter, Plaintiffs filed a Memorandum Brief in Opposition to Defendants' Motion to Dismiss on February 13, 2024 (RE 13, Page ID # 46-59). On February 20, 2024, Appellees/Defendants filed a Reply in Response to Plaintiffs' aforesaid Memorandum Brief in Opposition to Defendants' Motion to Dismiss (RE 14, Page ID # 60-66). On April 13, 2024, Plaintiffs filed a Suggestion of Death Upon the Record, pursuant to Fed. R. Civ. P. 25(a)(2) as to Plaintiffs' statement noting the death of Plaintiff Christopher Darnell (RE 15, Page ID # 67-68).

On August 23, 2024, the District Court filed a Memorandum Opinion (RE 20, Page ID # 81-92) and an Order (RE 21, Page ID # 93) granting the Defendants'

Motion to Dismiss. Entry of Judgment was filed also on August 23, 2024 (RE 22, Page ID # 94).

This appeal is from the aforesaid Memorandum Opinion (RE 20, Page ID # 81-92), Order (RE 21, Page ID # 93), and Judgment (RE 22, Page ID # 94) of the United States District Court for the Middle District of Tennessee, Nashville Division (Hon. Aleta A. Trauger) in which the District Court granted Defendants Secretary Hargett and Coordinator Goins' Motion to Dismiss. Plaintiffs Daniel T. Lewis, Samantha Zukowski, Charles Trayal, and LPT filed their Notice of Appeal (RE 23, Page ID # 95-96) on September 19, 2024.

II.    Statement of the Facts Relevant to the Issues Submitted for Review.

The instant appeal is a ballot access case on behalf of three registered Tennessee voters and the LPT challenging the ballot access laws for the formation of a new minor political party in Tennessee as applied to them pursuant to the requirements of Tenn. Code Ann. §§ 2-1-104(a)(l 4) (which sets out the definitions of a political party in Tennessee); 2-1- 104(a)(23) (which sets out the requirements for a recognized minor party to successfully turn in a petition signed by registered voters of at least 2.5 percent of the total number of votes cast in the most recent gubernatorial election as well as the petition format requirements); 2-1-104(a)(30) (which defines a statewide political party to have had at least one of its candidates for statewide office to have received 5 percent of the total vote cast for the

5

gubernatorial candidates in the most recent election for governor); 2-1-114 (which sets out the requisites for political parties as to oath and party rules); 2-5-208(d)(1) (which sets out how the names of political parties and independent candidates shall be listed on the ballot); and 2-13-107(a)(2) (which sets out the date and time deadline for filing the minor party petition at least 90 days before the general election); 2-13-107(e)(2) (which sets out the requirement that a recognized minor party must satisfy the requirements of § 2-1-114 by September 1 before the general election or have its candidates listed as independent candidates); and 2-13-201(1) (which requires a political party candidate to be of a statewide political party or a recognized minor party in order to appear on the ballot).

The LPT filed the case below questioning the constitutionality of the aforesaid ballot access laws because of the failure of any new minor political party in Tennessee to comply with said laws since 1968 (a total now of 56 years), the large number of petition signatures required (43,498 being 2.5 percent of the total votes cast for Governor of Tennessee in the most recent gubernatorial election), and the fact that the LPT had failed in past efforts in its petitioning, which--when considered in combination with each of the ballot access laws for new political parties in Tennessee as compared with the relatively easier petition requirements for independent candidates (i.e., 25 or 275 petition signatures)—results in LPT candidates being forced to petition as independents and being placed and labeled

on the general election ballot as independent candidates rather than their true identification as Libertarians—which results in inaccurate and confusing candidate political identification being provided to potential Tennessee voters. (Complaint, RE 1, Page ID # 1-10, ¶¶ V and VIII).

## SUMMARY OF THE ARGUMENT

The instant case is seeking both declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments, challenging the constitutionality of Tennessee ballot access laws for new minor political parties because the laws are too severe, unnecessary, serve no compelling state interest, cause voter confusion, have not been complied with since 1968, and Plaintiffs have been unsuccessful in their past efforts to comply with the law. Plaintiffs asked that the District Court state that the laws in question are unconstitutional both facially and as applied to the Plaintiffs, and permanently enjoin the enforcement of said laws.

Because the District Court granted the Defendants' Motion to Dismiss, Plaintiffs were not able to develop a substantial record as to their assertion about their past failures to comply with the Tennessee ballot access laws and why the case was different from the Sixth Circuit's previous decisions in the *Green Party of Tennessee v. Hargett* cases. Motions to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) are not viewed with favor and were once held to only be appropriate when

7

"it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, at 556 (2007). Accordingly, a well-pleaded complaint will survive a motion to dismiss even when the likelihood of recovery appears remote. *Id*.

It is the contention of the individual Plaintiffs and the LPT that Tennessee has gone too far in infringing their rights to political association and ballot access for general elections of the LPT and its potential candidates and voters. The District Court should not have granted the motion to dismiss without allowing the LPT to present evidence as to its assertion of its past attempts to comply with the laws in question and their severe burden on Plaintiffs' petitioning rights. As the U.S. Supreme Court has stated in regard to ballot access laws:

> A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties [citation omitted]. By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity in competition in the marketplace of ideas. *Anderson v. Celebrezze*, 460 U.S. at 793-794.

8

The laws in question challenged herein, when considered with the facts set forth in Plaintiffs' Complaint—for which a substantial record should have been allowed to be developed below by the District Court--are unconstitutional on their face and as applied to Plaintiffs.

## ARGUMENT

I.    THE DISTRICT COURT ERRED IN GRANTING THE DEFENDANTS' MOTION TO DISMISS AGAINST PLAINTIFFS BECAUSE TENNESSEE'S CHALLENGED BALLOT ACCESS LAWS FOR NEW POLITICAL PARTY RECOGNITION ARE A SEVERE BURDEN UPON THE CONSTITUTIONAL RIGHTS OF PLAINTIFFS BECAUSE THE PETITION REQUIREMENT HAS NOT BEEN COMPLIED WITH SO AS TO RESULT IN A NEW POLITICAL PARTY OBTAINING BALLOT ACCESS AS A POLITICAL PARTY IN TENNESSEE SINCE 1968, BECAUSE THE BALLOT ACCESS LAWS CAUSE VOTER CONFUSION, ARE NOT NARROWLY DRAWN TO ADVANCE COMPELLING STATE INTERESTS, AND BECAUSE OF THE PASSAGE OF TIME AND THE DIFFERING EFFORTS OF THE LIBERTARIAN PARTY OF TENNESSEE FOR BALLOT ACCESS SO AS TO DISTINGUISH IT FROM THE PREVIOUS DECISIONS OF THE U.S. COURT OF APPEALS FOR THE SIXTH CIRCUIT IN THE VARIOUS GREEN PARTY OF TENNESSEE V. HARGETT CASES, AND BECAUSE PLAINTIFFS HAD INDICATED THAT THEIR ATTEMPTS TO SUCCESSFULLY GAIN BALLOT ACCESS HAD BEEN UNSUCCESSFUL AND THE DISTRICT COURT BY GRANTING THE MOTION TO DISMISS DID NOT ALLOW THE RECORD TO BE DEVELOPED BECAUSE PLAINTIFFS HAD ALLEGED THAT THEY HAD FIALED IN EFFORTS IN THE PAST TO COMPLY WITH THE TENNESSEE LAWS FOR RECOGNITION OF NEW POLITICAL PARTIES AS SET FORTH IN PARAGRAPH VIII OF THE COMPLAINT.

A.    <u>Standard of Review</u>

In judging a motion to dismiss, the U.S. Court of Appeals for the Sixth Circuit views the factual allegations in the complaint as true and construed in the light most favorable to plaintiff. *Saylor v. Parker Seal Co*., 975 F.2d 252, 254 (6th Cir. 1992). Therefore, all material allegations in the complaint are accepted as true and should be construed in the light most favorable to the party opposing the motion to dismiss with the court to then determine whether the complaint states a valid claim for relief. Thus, to evaluate a complaint's sufficiency, courts in the Sixth Circuit should follow three steps. "First, the court must accept all of the plaintiff's factual allegations as true. *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). Second, the court must draw all reasonable inferences in the plaintiff's favor. *Id.* And third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). Or, as the Ninth Circuit Court of Appeals has held: "Dismissal for failure to state a claim is proper only if it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved." *Kelson v. City of Springfield*, 767 F.2d 651, 653 (9th Cir. 1985). However, the "complaint" must contain sufficient factual

10

matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. at 678.

A complaint need not contain detailed factual allegations, but it must provide the grounds for entitlement for relief and not merely a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), quoting in part, *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990).

B.    Tennessee's challenged ballot access laws for new political party recognition are a severe burden upon the Constitutional rights of Plaintiffs because the petition requirement has not been complied with so as to result in a new political party obtaining ballot access as a political party in Tennessee since 1968.

Tennessee's unnecessarily early petition deadline coupled with the high political party petition signature requirement--i.e., 2.5 percent of the total number of votes cast for all gubernatorial candidates in the most recent Tennessee gubernatorial election, which has not been complied with since 1968, are unconstitutional, lack any compelling interest, result in voter confusion by labeling

11

a minor party candidate as an independent candidate, and unequally and unfairly impact in a discriminatory manner the rights of minor, unrecognized political parties and their potential voters. The number of signatures currently required in Tennessee (43,498) is almost twice as many as the 22,000 petition signatures referenced in *American Party of Texas v. White*, 415 U.S. 767 (1974)[2], wherein the Supreme Court noted that ". . . 1% of the vote for governor at the last general election and in this instance, 22,000—falls within the outer boundaries of support the State may require before according political parties ballot position." *Id*. at 783.

Instead, Tennessee has extremely easy requirements for independent candidates to be listed on Tennessee's General Election ballot, but only with any political party identification stripped from the ballot. (Complaint, RE 1, Page ID # 1-10, ¶ VI). Because of these easier independent requirements and the difficulty of the minor political party petition requirement in Tennessee, voter confusion results from LPT candidates being listed on the ballot as Independent candidates instead of their correct political designation. It should be remembered that one of the

---

[2] The 43,498 petition signatures currently required in Tennessee under the 2.5% of the vote for governor at the last general election is not only significantly greater than the 22,000 petition signatures under the 1% of the vote for governor at the last general election that Texas required in *American Party of Texas v. White, Id*., but is even more severe than the requirement in Texas at that time because of the far greater population size of Texas as compared to Tennessee as well as being higher than the 40,039 valid petition signatures required originally at the time of the *Green Party of Tennessee v. Hargett* decisions.

reasons the Texas 1% petition requirement was upheld by the U.S. Supreme Court

in *American Party of Texas v. White* was because "Two political parties which were

plaintiffs in this very litigation qualified for the ballot under Art 13.45(2) (Supp

1973) in the 1972 election." *Id.,* at 783-784.  In contrast, Tennessee's 2.5%

requirement has not been complied with so as to have a new minor political party

appear on the Tennessee ballot since 1968.

As the U.S. Supreme Court observed in an election controversy, the

historical record of political parties' participation in elections is relevant as "[p]ast

experience will be a helpful, if not always an unerring, guide." *Storer v. Brown*,

415 U.S. 724, at 742 (1974).  Further, the election laws in question and the District

Court's ruling below (Memorandum, RE 20, Page ID # 81-92) are contrary to what

the U.S. Court of Appeals for the Eighth Circuit held in emphasizing the

importance ". . . that voters be permitted to express their support for independent

and new party candidates during the time of the major parties' campaigning and for

some time after the selection of candidates by party primary." *McLain v. Meier*,

637 F.2d 1159, at 1164 (8th Cir. 1980).  Even if other political parties had been able

to comply with the Tennessee ballot access law in question, law does not prevent

successful challenges by other parties and candidates.  *Anderson v. Celebrezze*, 460

U.S. at 783 n.1; see also *Anderson v. Celebrezze*, 499 F.Supp. 121 (S.D. Ohio

1980).  However, with the lack of successful petitioning, it should be a

consideration as the U.S. Supreme Court has noted that ". . . it will be one thing if independent candidates have qualified with some regularity and quite a different matter if they have not." *Storer v. Brown*, *Id.*

Because of the established status of the two major political parties in Tennessee, neither the Republican nor Democratic parties have ever had to attempt to petition in order to achieve the 2.5 percent Tennessee ballot access petition requirement challenged herein. In evaluating ballot access laws for a political party, the U.S. Supreme Court has stated ". . . that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other." *American Party of Texas v. White*, 415 U.S. at 782, n.13. Since this case involves election laws that burden a minor political party, and the corresponding constitutional right of individuals to political expression and association, the appropriate standard of review which should be required is strict scrutiny, so that state laws cannot stand unless they "further compelling state interests . . . that cannot be served equally well in significantly less burdensome ways." *American Party of Texas v. White*, 415 U.S. at 780-781.

Thus, the United States Supreme Court has held in *Anderson v. Celebrezze*, *Id.*, what the standard is to be used in determining whether election laws are unconstitutionally oppressive of potential voters' rights. *Anderson v. Celebrezze,*

14

460 U.S. at 789.  Under this test, the trial court must apply a level of scrutiny

which varies on a sliding scale with the extent of the asserted injury to Plaintiffs'

constitutional rights.  When, at the low end of that scale, the law "imposes only

'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth

Amendment rights of voters, the 'State's important regulatory interests are

generally sufficient to justify' the restrictions."  *Burdick v. Takushi*, 504 U.S. 428,

434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. at 788, 788-789 n.9.  But

when the law places "severe" burdens on the rights of political parties, candidates

or voters, "the regulation must be 'narrowly drawn to advance a state interest of

compelling importance.'"  *Id.* at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289

(1992)).  In fact, ". . . because the interests of minor parties and independent

candidates are not well represented in state legislatures, the risk that the First

Amendment rights of those groups will be ignored in legislative decision-making

may warrant more careful judicial scrutiny."  *Anderson v. Celebrezze*, 460 U.S., at

793, n. 16.  After all, "the State may not be a 'wholly independent or neutral

arbiter' as it is controlled by the political parties in power, 'which presumably have

an incentive to shape the rules of the electoral game to their own benefit.'"

*Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 587 (6th Cir. 2006) (quoting

from *Clingman v. Beaver*, 544 U.S. 581 (2005) (O'Conner, J., concurring).

C.     Tennessee's challenged ballot access laws for new political party recognition cause voter confusion and are not narrowly drawn to advance compelling state interests.

It is undisputed that restrictions on access to the election ballot burden two distinct and fundamental rights, ". . . the right of individuals to associate for the advancement of political beliefs, the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). "The freedom to associate as a political party, a right we have recognized as fundamental [*Williams v. Rhodes*, 393 U.S. at 30-31], has diminished practical value if the party can be kept off the ballot. Access restrictions also implicate the right to vote because, absent recourse to referendums, 'Voters can assert their preferences only through candidates or parties or both,' *Lubin v. Panish*, 415 U.S. 709, 716 (1974); "*Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, at 814 (1979).

While Tennessee's early petition deadline and signature requirement are relatively severe compared to other states, the Supreme Court has spoken on at least one occasion of 1% of the vote for governor as "within the outer boundaries of support the State may require before according political parties ballot position." *American Party of Texas v. White*, 415 U.S. 767, at 783 (1974). See also, *McLain v. Meier*, *Id*. at 1163-1164. There is persuasive logic in the Sixth Circuit's decision in *Graveline v. Benson*, 992 F.3d 524 (6th Cir. 2021) which approved a reduction of

16

the number of petition signatures required from 30,000 statewide to just 12,000

and enjoined enforcement of the ballot access statutes for independent candidates

in Michigan because the challenged statutes, in combination, violated the First and

Fourteenth Amendments because they were not narrowly drawn to advance

compelling state interests.  *Id*.  Of course, there are differences in the facts and

laws between Michigan and Tennessee— particularly as to the requirements for

petitions for independent candidates.  Nonetheless, the *Graveline* cases do give us

some recent guidance from the Sixth Circuit.  Originally the district court had

issued a preliminary injunction that allowed Graveline to have ballot access if he

had  at least 5,000 valid petition signatures.[3] *Graveline v. Johnson*, 336 F. Supp. 3d

801, 817 (E.D. Mich. 2018).  This decision was upheld when the Sixth Circuit

denied a stay request as to the district court's injunction pending appeal.  *Graveline

v. Johnson*, 747 F. App'x 408, 414-415 (6th Cir. 2018).  Thereafter, after both

parties filed cross-motions for summary judgment, the district court granted

plaintiff's motion for summary judgment and set an interim measure allowing

independent candidates to submit 12,000 petition signatures for the 2020 Michigan

general election.  On appeal the district court's opinion and judgment were

---

[3] The Plaintiff Christopher Graveline waited to begin his attempt to qualify for the [Michigan November 6, 2018, general election] ballot until June 4, 2018, with the independent candidate deadline that year being July 19, 2018. *Graveline v. Benson*, 992 F.3d at 529.

17

affirmed by the Sixth Circuit. *Graveline v. Benson, Id*. Most importantly, the Sixth Circuit noted in Graveline that the "... Supreme Court instructs us to distinguish between burdens that restrict political participation equally and burdens that 'fall[ ] unequally on new or small political parties or on independent candidates.'" *Graveline v. Benson, Id*. at 535, citing *Anderson v. Celebrezze*, 460 U.S. at 793-794.

Because the Independent petition in Tennessee is so easy, and the minor party petition is so difficult, minor party candidates in Tennessee have used the Independent procedure for ballot access. As a result, Tennessee voters invariably see a general election ballot in which only the Democratic and Republican nominees have their party label. Every other candidate on the general election ballot is labeled as an "Independent" so that most Tennessee voters don't know the true party affiliation of those Independent candidates. "A candidate who wishes to be a party candidate should not be compelled to adopt Independent status in order to participate in the electoral process." *McLain v. Meier*, 637 F.2d at 1165. At present, the LPT candidates are forced to petition as Independents under the lesser petition signature requirement of 25 petition signatures for most offices or 275 petition signatures for President of the United States and will be placed and labeled on the general election ballot at Independent candidates pursuant to Tenn. Code

Ann., § 2-13-107(e)(2)—thus, misrepresenting and denying correct information to Tennessee voters of the true political party affiliation of Libertarian candidates.

D.    Because of the passage of time and the differing efforts of the Libertarian Party of Tennessee for ballot access, the instant case is distinguished from the previous decisions of the U.S. Court of Appeals for the Sixth Circuit in the various Green Party of Tennessee v. Hargett cases.

Plaintiffs specifically alleged in their Complaint that they had been unsuccessful in the past in achieving ballot access in Tennessee as a minor political party (Complaint, RE 1, Page ID # 1-10, ¶ VIII).  In considering the District Court's granting of the motion to dismiss, it is best to consider what the Plaintiffs would have presented to the District Court if they had had the opportunity at any subsequent hearing for injunctive relief and/or a trial on the merits of the case. The Memorandum Opinion of the District Court did not note the assertion by the Plaintiffs about their unsuccessful past efforts in achieving ballot access as a minor political party in Tennessee (Memorandum, RE 20, Page ID # 81-92).  In this regard, it should be remembered that the U.S. Court of Appeals for the Sixth Circuit particularly admonished the parties and the trial court in one of the several cases[4] under the style of *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 554 (6th Cir. 2014) that it did not want the issues of the case decided again on cross

---

[4] The several *Green Party of Tennessee v. Hargett* cases—which also involved the Constitution Party—began in 2011 and continued through 2017.

19

motions for summary judgment, but rather after ". . . substantial development of the record." *Id*.  Considering the passage of additional years since the last two decisions (which are both unreported in the official reporters) in *Green Party of Tennessee v. Hargett*, 2016 WL 4379150 (M.D. Tenn. 2016) and *Green Party of Tennessee v. Hargett,* 2017 WL 4011854 (6th Cir., May 11, 2017) with the district court reaching its final decision only after a full non-jury trial on the issues presented therein as well as considering  "the Sixth Circuit's strictures in 2014 against deciding a case by way of summary judgment motions, it is not hard to argue how the Sixth Circuit would look with disfavor on the decision in the instant case of the granting of the motion to dismiss without first hearing the newer, more developed facts in the instant case as to the LPT.

The aforesaid various *Green Party of Tennessee v. Hargett* cases cited by the District Court are not factually and materially on point because of the passage of time since they were decided, the different political parties involved therein (Green and Constitution), and the historical record since the aforesaid *Green Party* cases were decided as to the continued failure of any minor political party in Tennessee to comply with the laws in question because, as the U.S. Supreme Court has stated in considering ballot access and election laws and the historical record of political parties' participation in elections, "[p]ast experience will be helpful, if not always an unerring guide." *Storer v. Brown*, 415 U.S. 724, at 742

20

(1974).  See also, *Libertarian Party of Tennessee v. Goins*, 793 F. Supp.2d 1064,
1069-1070 (M.D. Tenn. 2010)[5] (discussing minor political parties' historical
election experiences in Tennessee prior to later changes in the ballot access laws)
and *Graveline v. Benson*, *Id*. at 539 (recognizing that ". . . Michigan's history
reveals the severity of this burden . . . and that [s]ince its implementation in 1988,
no independent candidate for statewide office has managed to complete a
qualifying petition.").  Thus, the unreported cases of *Green Party of Tennessee v.
Hargett,* 2016 WL 4379150 (M.D. Tenn. 2016); and 2017 WL 4011854 (6th Cir.,
May 11, 2017) cited by the District Court, when taken with the strictures of the
Sixth Circuit as to not deciding the case again on cross motions for summary
judgment, but only after  ". . . substantial development of the record."  *Green
Party of Tennessee v. Hargett*, 767 F.3d at 554, do not support the granting of the
motion to dismiss because of the passage of time and the continued lack of
compliance with the ballot laws in question, the different political party involved
(Libertarian rather than Green and Constitution), the stage of the current case as
opposed to a substantial record created at a nonjury trial, and the fact that ". . .

---

[5] While the LPT was not a party or participant in the various *Green Party of
Tennessee v. Hargett* cases, the Green Party of Tennessee and the Constitution
Party of Tennessee were parties and participants in the case of *Libertarian Party of
Tennessee v. Goins, Id.*

future elections might have different circumstances . . . ." *Graveline v. Benson*,

*Id*. at 539.

E.    The District Court by granting the Motion to Dismiss did not allow
      the record to be developed because the Plaintiffs had alleged that
      they have failed in efforts in the past to comply with Tennessee laws
      for the recognition of new political parties as set forth in Paragraph
      VIII of the Complaint.

The Plaintiffs in their Complaint below had alleged that the LPT had failed

in previous efforts to obtain ballot access.  However, the District Court by granting

the Motion to Dismiss, did not give the Plaintiffs the opportunity to develop the

record as to their past efforts for ballot access as a political party in Tennessee,

contrary to this Court's strictures in the *Green Party of Tennessee v. Hargett* cases.

The District Court should have denied the Motion to Dismiss and allowed

testimony and evidence at trial in the case below so as to allow substantial

development of the record. Courts have recognized that ballot access requirements

impose a tremendous burden on individuals that seek to field candidates for

election but may have fewer resources than the two major parties. *Council of*

*Alternative Political Parties v. Hooks*, 121 F.3d 876, 881 (3rd Cir. 1997).

The teaching of the U. S. Supreme Court is that:

". . . even when pursuing a legitimate interest, a state may not choose means
that **unnecessarily restrict** constitutionally protected liberty," *Kusper v.
Pontikes*, 414 U.S. 51 (1973), and we have required that states adopt the
**least drastic means** to achieve their end.  *Lubin v. Panish*, 415 U.S. at 716.
. .; *Williams v. Rhodes*, 393 U.S. at 31-33 . . ..  **This requirement is**

**particularly important where restrictions on access to the ballot are involved**.  The state's interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the development of the nation. [Emphasis added] *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. at 185.

"As our past decisions have made clear, the significant encroachment upon associational freedom cannot be justified upon a mere showing of a legitimate state interest [citations omitted].  If the State has open to it a least drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental liberties.  *Shelton v. Tucker*, 364 U.S. 479 [1960]."  *Kusper v. Pontikes*, 414 U.S. at 58-59.  In deciding what the "least drastic or restrictive means," is, it is necessary for the Court to ". . . consider the facts and circumstances behind the law, the interest which the state claims to be protecting, and the interests of those who are disadvantaged by the classification."  *Storer v. Brown*, 415 U.S. at 730, citing *Williams v. Rhodes, Id*., and *Dunn v. Blumstein*, 405 U.S. 330 (1974).  Also see, *Mandel v. Bradley*, 432 U.S. 173 (1977).

In regard to any petition drive to place the LPT and its candidates on the ballot in Tennessee as a recognized minor political party under the constraints and requirements of the current political party petitioning laws in question herein, the LPT and its supporters alleged in their Complaint that said constraints and requirements are beyond the capacity of the LPT and its supporters to achieve and

23

at present are virtually impossible to comply with, as well as the assertion that past attempts by the LPT to achieve ballot access as a minor political party in Tennessee have been unsuccessful.  (Complaint, RE 1, Page ID # 1-10, ¶¶ V and VIII).  In this regard the failure of any unrecognized political party to successfully petition in Tennessee for political party recognition since 1968 speaks volumes about the difficulty of the ballot access laws at issue herein.

More significantly--as noted above--the Plaintiffs ". . . have failed in efforts in the past to comply with the laws of the State of Tennessee for the recognition of new political parties . . . ." (Complaint, RE 1, Page ID # 1-10, ¶ VIII).  The U.S. Supreme Court has ". . . held that to comply with the First and Fourteenth Amendments the State must provide a feasible opportunity for new political organizations and their candidates to appear on the ballot." *Storer v. Brown*, *Id*., at 746.  The U. S. Supreme Court also noted that ". . . the political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other." *Id*. at 745.  The fact that Tennessee has relatively easy ballot access for independent candidates (i.e., 25 petition signatures except for the 275 petition signatures required for independent presidential candidates) does not excuse the unnecessarily difficult and rarely complied with requirements for new political party recognition.  It might well be wondered if Tennessee ". . . is willing to encourage minority political voices, but

only if they are partially stripped of a legitimizing party label." *McLain v. Meier*, *Id*., at 1165, n.12.

The District Court on page 11 of its Memorandum Decision stated that the plaintiffs' Complaint left ". . . little doubt that the plaintiffs are asking the court to do exactly what the Sixth Circuit cautioned against in the *Green Party* litigation— treat Tennessee's statutes as *per se* unconstitutional, simply because the signature requirement for parties is, on its face, so high." (Memorandum, RE 20, Page ID # 81-92, at 91). However, Plaintiffs-Appellants believe that the foregoing District Court's reasoning was in error because the LPT and the individual plaintiffs were simply asking to have the opportunity to have a substantial development of the record as to their past unsuccessful efforts in trying to achieve minor party ballot access in Tennessee. The District Court's granting of the Motion to Dismiss denied them the right to do so unlike in the nonjury trial afforded the Green Party of Tennessee and the Constitution Party of Tennessee in their final cases after the Sixth Circuit had overturned summary judgments in the minor parties' favor and ordered a nonjury trial so that there would be a substantial development of the record below. *Green Party of Tennessee v. Hargett*, 791 F.3d 684 (6th Cir. 2015); *Green Party of Tennessee v. Hargett*, 2016 WL 4379150 (M.D. Tenn. 2016); and *Green Party of Tennessee v. Hargett*, 2017 WL 4011854 (6th Cir. May 11, 2017). Since the LPT had alleged that they had failed in the past, the opportunity at a hearing should have been

allowed where they could have shown the actual expenditures and volunteer hours put forward in their attempts to comply with the petition requirement. *Graveline v. Benson, Id.*, at 530.

CONCLUSION

WHEREFORE, premises considered, the Plaintiffs-Appellants request that, upon full consideration of this appeal, the Court of Appeals reverse the decision of the United States District Court for the Middle District of Tennessee, Nashville Division, in the case below, declare the relief prayed for herein by instructing the District Court upon remand to deny the Defendants-Appellees Secretary of State and Coordinator of Elections' Motion to Dismiss and permit further development of the record at trial, and grant such other and further relief as to which Plaintiffs-Appellants may be entitled, and which this Court may deem equitable and just.

Respectfully submitted this 12th day of November, 2024.

> Daniel T. Lewis, Samantha Zukowski, Charles Trayal, and Libertarian Party of Tennessee, Appellants
>
> JAMES C. LINGER, OBA#5441
>
> s/ James C. Linger
> James C. Linger
> 1710 South Boston Avenue
> Tulsa, OK 74119-4810
> (918) 585-2797 Telephone
> bostonbarristers@tulsacoxmail.com
>
> *Counsel for Appellants*

26

STATEMENT OF RELATED CASES

Counsel believes there is a related case in this Court of *Green Party of Tennessee v. Hargett*, No. 16-6299, 2017 WL 4011854 (6th Cir., May 11, 2017).

Date:  November 12, 2024

JAMES C. LINGER, OBA#5441

/s/ James C. Linger
James C. Linger
*Counsel for Appellants*
Daniel T. Lewis, Samantha Zukowski,
Charles Trayal, and Libertarian Party of
Tennessee, Appellants

CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32 (g)(1) and 6th Cir. R. 32(a), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) and (B) because this brief contains 6,499 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(i) and 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Word 13, Times New Roman 14-point font.

Date:  November 12, 2024

JAMES C. LINGER, OBA#5441
/s/ James C. Linger
James C. Linger

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2024, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for the

Sixth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

JAMES C. LINGER, OBA#5441

/s/ James C. Linger
James C. Linger

*Counsel for Appellants*

ADDENDUM

DESIGNATION OF DOCUMENTS

Pursuant to 6th Cir. R. 28(b)(1)(A)(i) and 30(g)(1), Plaintiffs-Appellants

hereby designate the following relevant documents from the lower court record,

M.D. Tenn., Nashville Division, Docket Number 3:23-cv-01266:

RE 1, Complaint, Page ID # 1-10

RE 11, Motion to Dismiss, Page ID # 28-30

RE 22, Judgment, Page ID # 94

RE 20, Memorandum Opinion, Page ID # 81-92

RE 23, Notice of Appeal, Page ID # 95-96