No. 24-5856

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

CHRISTOPHER DARNELL, DANIEL T. LEWIS, SAMANTHA ZUKOWSKI, CHARLES
TRAYAL, LIBERTARIAN PARTY OF TENNESSEE,

*Plaintiffs-Appellants*,

v.

TRE HARGETT & MARK GOINS,

*Defendants-Appellees.*

_____

On appeal from the United States District Court
for the Middle District of Tennessee
No. 3:23-cv-1266

_____

### Brief of Defendants-Appellees

_____

Jonathan Skrmetti
*Attorney General and Reporter*

Zachary Barker
*Senior Assistant Attorney General*

J. Matthew Rice
*Solicitor General*

State of Tennessee
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
Zachary.Barker@ag.tn.gov
Phone: (615) 532-4098

*Counsel for Defendants-Appellees*

## STATEMENT RE: SIXTH CIRCUIT RULE 26.1

Pursuant to Fed. R. App. P. 26.1(a) and 6 Cir. R. 26.1(a), no corporate affiliate/financial statement is required because Defendant-Appellees are officials of the State of Tennessee.

# TABLE OF CONTENTS

STATEMENT RE: SIXTH CIRCUIT RULE 26.1……………………………………ii

TABLE OF AUTHORITIES………………………………………………………iv

ISSUE PRESENTED FOR REVIEW ......................................................................1

INTRODUCTION ...................................................................................................2

STATEMENT OF THE CASE ...............................................................................3

STANDARD OF REVIEW ....................................................................................9

ARGUMENT ........................................................................................................10

CONCLUSION…………………………………………………………….. 23

# TABLE OF AUTHORITIES

## Cases

*Am. Party of Texas v. White*,
    415 U.S. 767 (1974) .................................................................................. 19, 20

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ........................................................................................ 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 10, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 10

*Burdick v. Takushi*,
    504 U.S. 428 (1992) .................................................................................. 11, 12

*Burson v. Freeman*,
    504 U.S. 191 (1992) ........................................................................................ 19

*Cowen v. Secretary of State of Georgia*,
    22 F.4th 1227 (11th Cir. 2022) ...................................................................... 22

*Crawford v. Marion Cty. Election Bd.*,
    553 U.S. 181 (2008) ........................................................................................ 19

*Diei v. Boyd*,
    116 F.4th 637 (6th Cir. 2024) ........................................................................ 18

*Disability Law Ctr. of Alaska v. Meyer*,
    484 F. Supp. 3d 693 (D. Alaska Sept. 3, 2020) .............................................. 12

*Eu v. San Francisco Cnty. Democratic Cent. Committee*,
    489 U.S. 214 (1989) ........................................................................................ 20

*Graveline v. Benson*,
    992 F.3d 524 (6th Cir. 2021) .................................................................... 20, 21

*Green Party of Tenn. v. Hargett*,
   700 F.3d 816 (6th Cir. 2012) ...................................................................8

*Green Party of Tenn. v. Hargett*,
   767 F.3d 533 (6th Cir. 2014) ..............................................................8, 14

*Green Party of Tenn. v. Hargett*,
   No. 3:11-cv-00692, 2016 WL 4379150 (M.D. Tenn. Aug. 17, 2016) ........ passim

*Green Party of Tenn. v. Hargett*,
   No. 16-6299, 2017 WL 4011854 (6th Cir. May 11, 2017).......................... passim

*Green Party of Tennessee v. Hargett*,
   791 F.3d 684 (6th Cir. 2015) .............................................................5, 12

*Indiana Green Party*,
   No. 1:22-cv-00518, 2023 WL 5207924 (S.D. Ind. Aug. 14, 2023)....................22

*Jenness v. Fortson*,
   403 U.S. 431 (1971)........................................................................22

*Kovalchuk v. City of Decherd*,
   95 F.4th 1035 (6th Cir. 2024) ............................................................18

*Logsdon v. Hains*,
   492 F.3d 334 (6th Cir. 2007) .............................................................10

*Munro v. Socialist Workers Party*,
   479 U.S. 189 (1986)................................................................... 12, 20

*Peterson v. Johnson*,
   87 F.4th 833 (6th Cir. 2023) ...............................................................9

*Storer v. Brown*,
   415 U.S. 724 (1974)......................................................................12

*Sugarman v. Dougall*,
   413 U.S. 634 (1973)......................................................................11

*Tashjian v. Republican Party of Conn.*,
   479 U.S. 724 (1986) ........................................................................................11

*Tripp v. Scholz*,
   872 F. 3d 857 (7th Cir. 2017) .......................................................................22

*Williams v. Rhodes*,
   393 U.S. 23 (1968) ................................................................................ 12, 15

**Statutes**

Section 2-1-104(a)(30) ........................................................................................3

Subsection (1) of § 2-1-114 ...............................................................................5

Tenn. Code Ann. § 2-1-104(a)(23) ........................................................... passim

Tenn. Code Ann. § 2-13-107(a)(2) ............................................................ passim

Tenn. Code Ann. § 2-1-104(a)(14) ....................................................................3

Tenn. Code Ann. § 2-1-114(2) ...........................................................................5

Tenn. Code Ann. § 2-13-107(e)(2) .....................................................................5

Tenn. Code Ann. § 2-5-208(d)(1) .......................................................................6

Tenn. Code Ann. §§ 2-13-201, -202 ...................................................................5

**Rules**

Fed. R. App. P. 26.1(a) and 6 .............................................................................. i

Fed. R. Civ. P. 12(b)(6) ......................................................................................9

Sixth Circuit Rule 25(f)(1)(A) ...........................................................................1

Sixth Circuit Rule 26.1 ....................................................................................... i

Sixth Circuit Rule 28(b)(1)(A)(i) .......................................................................2

## ISSUE PRESENTED FOR REVIEW

Whether the District Court properly dismissed Plaintiffs' as-applied challenge to Tennessee's ballot-access requirements for recognized minor parties—particularly, the signature requirement in Tenn. Code Ann. § 2-1-104(a)(23) and the filing deadline in Tenn. Code Ann. § 2-13-107(a)(2)—when Plaintiffs failed to allege facts demonstrating that these requirements imposed a burden on them, and thus failed to meaningfully distinguish their challenge from a previously unsuccessful challenge to the same statutes.

## INTRODUCTION

Tennessee's ballot access provisions impose no burden on political parties seeking "recognized minor party" status, as ultimately decided in a line of cases involving the Green Party and the Constitutional Party. The question in this case is a narrow one: Whether Plaintiffs alleged facts that differ their case from the cases already decided. They did not.

In *Green Party of Tennessee v. Hargett*, this Court affirmed the district court's determination that obtaining signatures on a petition equal to 2.5% of the voters in the last gubernatorial election and submitting that petition 90 days before the election imposed no burden on parties seeking "recognized minor party" status. No. 16-6299, 2017 WL 4011854 (6th Cir. May 11, 2017) (affirming *Green Party of Tenn. v. Hargett*, No. 3:11-cv-00692, 2016 WL 4379150 (M.D. Tenn. Aug. 17, 2016)). *Id.* Because "the statutes imposed no burden," whether there was an "adequate justification" for the requirements was "immaterial." *Id.* at *4.

Here, the District Court properly recognized that this Court had upheld the constitutionality of Tennessee's ballot-access provision and properly determined that Plaintiff's bare-bones allegations were insufficient to state a plausible claim to relief. The District Court noted that Plaintiffs alleged "no specific details" about their "operations or the particular challenges that it would face, or has faced, in seeking to comply with the [ballot-access] requirements." Mem. Opinion, R. 20,

PageID# 90-91.  The District Court dismissed the Complaint for failure to state a claim upon which relief may be granted, and this Court should affirm.

## STATEMENT OF THE CASE

### I.    Legal Background

Plaintiffs-Appellants—the Libertarian Party of Tennessee and four individual plaintiffs—filed an action challenging two of Tennessee's ballot-access provisions: (1) the signature requirement for a petition to become a recognized minor party (2.5% of the voters from the last gubernatorial election), and (2) the filing deadline (90 days before the general election) for such a petition.  These two requirements are part of Tennessee's larger statutory scheme providing for the recognition of political parties and for how a political party's candidates are presented on the ballot.

#### A.    Requirements for recognition of political parties

In Tennessee, a "[p]olitical [p]arty" is "an organization which nominates candidates for public office."  Tenn. Code Ann. § 2-1-104(a)(14).  Tennessee law defines both a "statewide political party" and a "recognized minor party."  *Id.* § 2-1-104(a)(23), (30).

Section 2-1-104(a)(30) provides:

"Statewide political party" means a political party at least one (1) of whose candidates for an office to be elected by voters of the entire state has received a number of votes equal to at least five percent (5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor.

3

Section 2-1-104(a)(23) provides:

"Recognized minor party" means any group or association that has successfully petitioned by filing with the coordinator of elections a petition which shall conform to requirements established by the coordinator of elections, but which must at a minimum bear the signatures of registered voters equal to at least two and one-half percent (2.5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor, and on each page of the petition, state its purpose, state its name, and contain the names of registered voters from a single county[.]

Section 2-13-107(a)(2) provides the method by which an organization can

become a recognized minor party:

To be recognized as a minor party for purposes of a general election, a petition as required in § 2-1-104 must be filed in the office of the coordinator of elections no later than twelve o'clock (12:00) noon, prevailing time, ninety (90) days prior to the date on which the general election is to be held. Notwithstanding the minimum number of signatures required in § 2-1-104(a)(23), if an organization intends to establish a recognized minor party solely within one (1) county, in all other respects, the petition shall conform to the requirements established therein, except the petition must at a minimum bear the signatures of registered voters within such county equal to at least two and one-half percent (2.5%) of the total number of votes cast within such county for gubernatorial candidates in the most recent election for governor. The petition shall be accompanied by the name and address of the person or the names and addresses of the members of the group or association filing the petition to form the recognized minor political party.

And § 2-1-114 sets forth an additional requirement:

No political party may have nominees on a ballot or exercise any of the rights of political parties under this title until its officers have filed on its behalf with the secretary of state and with the coordinator of elections:

. . .

4

(2)    A copy of the rules under which the party and its subdivisions operate. Copies of amendments or additions to the rules shall be filed with the secretary of state and with the coordinator of elections within thirty (30) days after they are adopted and shall be of no effect until ten (10) days after they are filed.

Tenn. Code Ann. § 2-1-114(2).[1]

## B.    Requirements for party nominees to appear on ballots

A person cannot appear on the ballot as the nominee of a political party for the offices of Governor, Members of the General Assembly, United States Senator, Member of the United States House of Representatives, or any office elected by voters of a county, unless the political party "(1) [i]s a statewide political party or a recognized minor party; and (2) [h]as nominated the person substantially in compliance with [Tennessee law]." Tenn. Code Ann. §§ 2-13-201, -202. For a recognized minor party's candidates to appear on the regular November general-election ballot, the requirements of § 2-1-114 must be met "no later than September 1 after the primary elections are held." Tenn. Code Ann. § 2-13-107(e)(2). If the deadline is not met, then the candidates will appear on the ballot as independent candidates. *Id.*

On general-election ballots, "the name of each political party having nominees on the ballot shall be listed in the following order: majority party, minority

---

[1] Subsection (1) of § 2-1-114 was found unconstitutional in 2015 and is no longer in effect. *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 696 (6th Cir. 2015). Subsection (2) remains in effect. *Id.*

party, and recognized minor party, if any." Tenn. Code Ann. § 2-5-208(d)(1). "A column for independent candidates shall follow the recognized minor party, or if there is not a recognized minor party on the ballot, shall follow the minority party[.]" *Id.* The names within each column are listed alphabetically. *Id.*

## II.   Procedural Background

Plaintiff Libertarian Party of Tennessee is not a recognized party under Tennessee law, and it does not nominate candidates for office in Tennessee by primary election. Complaint, R. 1 at PageID# 2. Plaintiff Daniel Lewis is a member of the Libertarian Party and a registered voter in Tennessee. *Id.* at PageID# 1. He was a potential candidate for offices elected during the November 2024 general election, and he wishes to vote for Libertarian Party candidates on the Tennessee ballot in the November election. *Id.* at PageID# 1–2. Plaintiffs Samantha Zukowski and Charles Trayal are members of the Libertarian Party and registered voters in Tennessee who wished to vote for Libertarian Party candidates on the Tennessee ballot in the November 2024 election. *Id.* at PageID# 2.

Plaintiffs filed suit on December 1, 2023, and claimed that Tennessee's ballot-access laws—particularly, the signature requirement in § 2-1-104(a)(23), in conjunction with the 90-days-before-election filing requirement in § 2-13-107(a)(2)—violate the First and Fourteenth Amendments to the United States Constitution as applied to them, because they "set an unconstitutional burden." Complaint, R. 1,

6

PageID## 4, 5, 6.  The Complaint alleged, for example, that "it would be virtually impossible to meet the petition deadline for minor political parties of 90 days before the general election, pursuant to Tenn. Code Ann. § 2-13-107(a)(2) . . . because of the unnecessarily high petitioning requirement" and that "achieving statewide political party status by filing the petitions required under Tenn. Code Ann. §§ 2-1-104(a)(23), and 2-13-107(a)(2) in time for a general election sets an unconstitutionally early deadline, unnecessarily high number of petition signatures, and limited time for petitioning."  Complaint, R. 1, at 5, 6; *see also id.* at 6-7, 8.  Plaintiffs made no specific allegations about their attempts to comply with Tennessee's ballot-access laws for the November 2024 election, but rather, they only included a vague, general allegation that they "have failed in efforts in the past to comply with the laws of the State of Tennessee."  *Id.* at PageID# 7; *see* Br. Appellants at 19, 24.

Defendants moved to dismiss the Complaint for failure to state a claim upon which relief could be granted.  Defendants noted that the constitutionality of these ballot-access provisions had previously been upheld in a series of decisions in a case involving the Green Party of Tennessee and the Constitution Party of Tennessee; Defendants asserted that Plaintiffs had failed to allege any facts to distinguish their particular circumstances from those of the plaintiffs in those cases.  Mem. in Supp., R. 12 at 36-37; *see Green Party of Tenn.*, 2017 WL 4011854 (affirming *Green Party of Tenn.*, 2016 WL 4379150).

7

The District Court granted Defendants' motion and dismissed the Complaint. Order, R. 21, PageID# 93. Citing decisions of this Court, the District Court observed that Tennessee's 2.5% signature requirement is not unconstitutional on its face, and that the question whether strict scrutiny applies to Tennessee's ballot-access laws depends on whether they "actually impose[] a severe burden" on the plaintiffs. Mem., R. 20, PageID# 87-88 (citing *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 819 (6th Cir. 2012), and *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 549 (6th Cir. 2014)). The court further observed that the plaintiffs in the *Green Party* case ultimately failed to show that Tennessee's 2.5% signature requirement imposed *any* burden, and that it was upheld applying rational-basis review. *Id.* at PageID# 89 (citing *Green Party*, 2016 WL 4379150, at *30; *Green Party*, 2017 WL 4011854, at *6).

The District Court found that Plaintiffs' "strikingly short Complaint provides little, if any, reason . . . to think that [their] challenge has any more merit than the other parties'." Mem., R. 20, PageID# 90. "The Complaint alleges no specific details about the [Libertarian Party's] operations or the particular challenges that it would face, or has faced, in seeking to comply with the [ballot-access] requirements . . . ." *Id.* at PageID# 90-91. Instead, Plaintiffs "simply recited the law and [gave] the court the equivalent of an IOU for some future valid reason why that law should

8

lead anywhere other than where it led for the Green Party and Constitution Party." *Id.* at PageID# 92.

Plaintiffs now appeal to this Court.

## SUMMARY OF THE ARGUMENT

The District Court's dismissal of Plaintiffs' Complaint should be affirmed because the Complaint contains no facts sufficient to sustain their constitutional claims. Plaintiffs pleaded no facts showing that Tennessee's ballot-access requirements—including the 2.5% signature requirement—impose any particular burden on them, and thus pleaded no facts showing a material difference between their case and the *Green Party* case—in which a similar challenge to Tennessee's 2.5% signature requirement was rejected.

Furthermore, even if Plaintiffs had pleaded facts showing some minimal burden, they still would have failed to sufficiently state a claim for relief. Any such burden would be outweighed under the *Anderson-Burdick* standard by Tennessee's strong and legitimate interests—ensuring that a new political party has a significant modicum of support, avoiding voter confusion, and reducing administrative costs.

## STANDARD OF REVIEW

This Court reviews de novo a district court's decision to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Peterson v. Johnson*, 87 F.4th 833, 836 (6th Cir. 2023). A plaintiff must plead "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To determine whether a claim is plausible, the court construes the complaint liberally, "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007),

## ARGUMENT

Plaintiffs claimed that the 2.5% signature requirement in Tenn. Code Ann. § 2-1-104(a)(23), "taken in conjunction with" the 90-days-before-election deadline for filing a petition to be a recognized as a minor party in Tenn. Code Ann. § 2-13-107(a)(2), violates the First and Fourteenth Amendments.  Complaint, R.1, PageID# 5.[2]  The District Court properly dismissed Plaintiffs' challenge to the ballot-access laws because they failed to state a claim upon which relief can be granted.  Indeed,

_____

[2] While the Complaint listed several other ballot-access laws in addition to § 2-13-107(a)(2), Plaintiffs' claim focused only on the alleged combined effect of the signature requirement and the filing deadline.  The Complaint did not elaborate on the other cited statutes nor allege facts in support of any discrete claim based on them.  *See* Complaint, R. 1, at PageID# 5 (alleging that § 2-1-104(a)(23) "require[s] a new statewide political party or minor political party in order to be recognized to run candidates on a general election ballot in the State of Tennessee to petition successfully by presenting a petition with at least 2.5 percent of the total number of votes cast for all gubernatorial candidates in the most recent gubernatorial election as shown by petition to establish a political party filed with the Coordinator of Elections and signed by Tennessee registered voters").

two other minor political parties had previously challenged these same ballot-access provisions on similar grounds, and this Court affirmed a district-court decision upholding their constitutionality. *See Green Party of Tenn.*, 2017 WL 4011854, at *4, *5, *6 (affirming *Green Party of Tenn.*, 2016 WL 4379150, at *32, *37-38, *40). Plaintiffs here alleged no facts to distinguish their particular circumstances from those of the plaintiffs in *Green Party*.

**Plaintiffs Failed to State a Claim on which Relief Can Be Granted.**

The United States Constitution provides that States may prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, and that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors," for the purpose of choosing the President of the United States, Art. II, § 1, cl. 3. The Supreme Court has recognized that States hold the power to regulate their own elections. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)(citing *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973) and *Tashjian v. Republican Party of Conn.*, 479 U.S. 724, 730 (1986)). "Common sense" and "constitutional law" require that State governments play a role in structuring elections. *Burdick*, 504 U.S. at 433.

Accordingly, the Supreme Court has established and maintained a deferential approach to electoral logistics. "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order,

11

rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). Subjecting every electoral regulation to strict scrutiny and requiring that the regulation be narrowly tailored to advance a compelling state interest "would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Burdick*, 504 U.S. at 433; *see Disability Law Ctr. of Alaska v. Meyer*, 484 F. Supp. 3d 693, 703 (D. Alaska Sept. 3, 2020).

In the context of elections, the First and Fourteenth Amendments protect "two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Green* Party, 2016 WL 4379150, at *22 (quoting *Williams v. Rhodes*, 393 U.S. 23, 30 (1968)). These rights, however, are not absolute. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986). They must be balanced against a State's legitimate interest in ensuring fair and efficient elections. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

Consequently, only State laws that impose a severe burden on the right to vote face strict scrutiny. *Burdick*, 504 U.S. at 434. By contrast, laws that impose minimal, yet reasonable, burdens on electoral rights face rational-basis review "and survive if the state can identify 'important regulatory interests' to justify it." *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 693 (6th Cir. 2015) (quoting *Burdick*, 504 U.S. at 434; *see also Disability Law Ctr.*, 484 F. Supp. 3d at 703 (D. Alaska Sept. 3,

2020) (stating that "actions that impose tempered or minimal burdens on the right to vote will be subject to a lenient rational-basis scrutiny"). And when State laws impose *no* burden on electoral rights, the State need not identify any justification. *See Green Party*, 2017 WL 4011854, at *4 ("[B]ecause the district court determined that the statute imposed no burden, the plaintiffs' argument that the defendants did not present an adequate justification is immaterial.").

### A.    Plaintiffs alleged no facts showing that Tennessee's ballot-access requirements impose any burden on them.

Plaintiffs failed to allege that the signature requirement in § 2-1-104(a)(23), in conjunction with the 90-days-before-election filing requirement in § 2-13-107(a)(2), burdens their right to vote.

In the *Green Party* case, the plaintiffs—the Green Party of Tennessee and the Constitution Party of Tennessee—presented an as-applied challenge to Tennessee's 2.5% signature requirement. 2016 WL 4379150, at *22. The plaintiffs asserted they were financially burdened because they could not collect the required signatures without paying signature collectors, and that they were otherwise burdened because Tennessee's signature-verification system made it difficult to obtain the necessary signatures. *Id.* at *22, *24–27. But those assertions were not supported by the evidence at trial, which showed that plaintiffs were able to collect large numbers of signatures over a short period of time at no cost. *Id.* at *21. The district court found that no burden existed because the plaintiffs failed to show that acquiring the

13

signatures would cause any financial burden or that the signature-verification requirement created any burden. *Id.* at *26-29.

The district court also evaluated the impact of the signature requirement within the context of the entire ballot-access scheme, including the requirement that the petition be filed 90 days before the general election. *Id.* at *27 (citing *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 545 (6th Cir. 2014)). Noting that the 90-days-before-election deadline "provides ample opportunity to collect signatures when voters are engaged" over a period of "three-and-a-half years," *id.* at *27-28 (internal quotation marks and citation omitted), the district court found that the plaintiffs had failed to prove any burden imposed by the signature requirement, let alone a severe burden, *id.* at *29. And this Court affirmed, holding that the district court had not erred in assessing the burdens (more accurately, lack thereof) of Tennessee's law. *Green Party,* 2017 WL 4011854, at *4.

Plaintiffs' allegations here are materially indistinguishable. Consequently, their Complaint likewise fails to show that the signature requirement and filing deadline impose any burden on them—and thereby fails to state a claim for relief. Plaintiffs alleged that the ballot-access laws "set an unconstitutional burden," because of the "unnecessarily high" and "rather stringent" 2.5% signature requirement and the "early deadline" and "limited time for petitioning" imposed by the 90-days-before-election deadline. Complaint, R. 1 at 5–6. They further alleged that "it would be

14

virtually impossible" to meet the petitioning requirement and that "the supporters of the [Libertarian Party] are unable to marshal its resources in such a manner as to conduct a successful petition drive in Tennessee so as to meet the aforesaid . . . required number of signatures." *Id*., at 5–6.

Plaintiffs insist that the ballot-access statutes impose a "severe burden" on their rights, Br. Appellants, 9, 11, 15, and they argue that the *Green Party* decisions "are not factually and materially on point because of the passage of time since they were decided, the different political parties involved therein . . . , and the historical record since the aforesaid *Green Party* cases were decided [i.e., minor political parties not obtaining recognition in Tennessee]," Br. Appellants, 28. The District Court acknowledged that one could "imagine facts that, if true, would permit a plaintiff to overcome" the holdings in these cases—"particularly if, for example, complying with the minor party recognition requirement had, for some reason, become more burdensome since the issue was last considered or was imposing a particular burden on a particular plaintiff." Mem., R. 20, PageID# 90. But as the District Court found, Plaintiffs' Complaint includes no such allegations. "The Complaint alleges no specific details about [the Libertarian Party's] operations or the particular challenges that it would face, or has faced, in seeking to comply with the requirements . . . ," and it "avoids discussion of [Plaintiffs'] particular problems and instead speaks of the law in terms of burdens faced by 'new political parties' generally." *Id.* at 91.

15

Moreover, Plaintiffs fail to demonstrate how any of the asserted differences between this case and the *Green Party* case are material. The mere fact that time has passed, or that the Libertarian Party is not the Green Party, or that minor parties have still not been able to obtain recognition in Tennessee is not enough to show a plausible claim for relief. Yes, six years have passed since this Court affirmed the ruling that these same election statutes are constitutional. *Green Party of Tenn.*, 2017 WL 4011854, at *1. But that passage of time is a distinction without a difference. The statutes remain the same, and the ability or inability of minor parties to gain recognition in Tennessee is no different now.

Indeed, Plaintiffs stress that the situation has remained essentially unchanged for decades—i.e., that no new political party has been recognized since 1968. Br. Appellants, 2, 6, 7, 9, 11, 13, 24. But Plaintiffs cannot have it both ways. They cannot contend that their claims are supported by a decades-long purported impossibility to gain minor-party recognition, while simultaneously contending that a six-year-old decision rejecting those same claims must be disregarded for that same reason. Plaintiffs' Complaint failed to allege any significant fact that has changed due to "the passage of time" or "the historical record" since 2016.

Plaintiffs also failed to identify any facts—beyond the mere fact that they are not the Green Party or the Constitution Party—that would distinguish their situation from that of the Green Party or the Constitution Party. The plaintiffs in *Green Party*

at least attempted to comply with the ballot-access requirements, alleged that they incurred expenses trying to meet the requirements, and argued that they were burdened—all, of course, to no avail because those allegations were not supported by the proof at trial.  *See Green Party*, 2016 WL 4379150, at \*24-\*27; *Green Party*, 2017 WL 4011854, at \*4.  Plaintiffs here—beyond the vague allegation that they "have failed in efforts in the past to comply with the laws of the State of Tennessee"[3]—did not allege that they made *any* effort to meet the requirements since the *Green Party* case was finally decided, let alone that their efforts were different from those of the Green Party's.  In the end, and as the District Court observed, Plaintiffs' Complaint just changes the name of the party from the Green Party to the Libertarian Party.  *See* Mem., R. 20, at 92.

Finally, Plaintiffs argue that "it is best to consider what the [Plaintiffs] would have presented to the District Court . . . [at a hearing] and/or a trial on the merits of the case."  Br. Appellants, 19.  But that is impermissible under the applicable standard.  As Plaintiffs themselves recognize, a Rule 12(b)(6) motion to dismiss tests whether the *complaint* states a valid claim for relief.  Br. Appellants, 10.  While the court may draw "reasonable inferences," those inferences must be based on "factual content" pled by the plaintiff.  *Iqbal*, 556 U.S. at 678.  And those alleged facts and

---

[3]  Complaint, R. 1, PageID# 7; *see* Br. Appellants at 19, 24.

17

reasonable inferences must be sufficient to raise a right to relief above the "specula-tive level." *Diei v. Boyd*, 116 F.4th 637, 645 (6th Cir. 2024) (quoting *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1037 (6th Cir. 2024)).  Plaintiffs therefore cannot ask this Court to speculate about what they "would have been presented" at a later stage of the case. *See* Br. Appellants at 19.

### B.    Plaintiffs failed to state a claim even if they alleged facts showing some minimal burden.

Because Plaintiffs failed to allege facts showing that the ballot-access require-ments imposed any burden on them, the State need not prove any justifying interests for those requirements.  *See Green Party*, 2017 WL 4011854, at *4.  But even if Plaintiffs' Complaint had alleged facts sufficient to show that some minimal burden on their electoral rights exists, it would still fail to state a claim for relief because the signature requirement and 90-days-before-election filing deadline would be consti-tutional under the *Anderson-Burdick* test.  *See Green Party*, 2016 WL 4379150, at *30 (applying rational-basis review because plaintiffs had shown only a minimal burden, if any).

As discussed above, statutes that impose only a minimal burden are subject to rational-basis scrutiny, which Tennessee's 2.5% signature requirement and 90-days-before-election filing deadline would easily satisfy.  *See Green Party*, 2017 WL 4011854, at *4 (6th Cir. May 11, 2017) (affirming district court's application of ra-tional-basis review); *Green Party*, 2016 WL 4379150, at *30 (M.D. Tenn. Aug. 17,

2016) (upholding statutes under rational-basis review). Plaintiffs make no argument to the contrary.

As the district court found in the *Green Party* case, the State's interests are "legitimate and sufficiently weighty to justify any limitations" imposed on Plaintiffs. *Green Party*, 2016 WL 4379150, at *30*; see also Green Party*, 2017 WL 4011854, at *4 ("The district court applied the *Anderson-Burdick* balancing test . . . and determined that the plaintiffs failed to show that the statute was unconstitutional."). Furthermore, the 90-days-before-election petition filing deadline actually "operates to significantly lighten any burden" on Plaintiffs—because they have years to gather signatures. *Green Party*, 2016 WL 4379150, at *32.

The State has strong and legitimate interests in ensuring that a new political party has a significant modicum of support, avoiding voter confusion, and reducing administrative costs, all of which were recognized by the district court in the *Green Party* case. *See* 2016 WL 4379150, at *29-*32. The Supreme Court has held that States' interests in "preservation of the integrity of the electoral process and regulating the number of candidates on the ballot to avoid voter confusion, are compelling." *Am. Party of Texas v. White*, 415 U.S. 767, 783 n.14 (1974); s*ee also Crawford v. Marion Cty. Election Bd*., 553 U.S. 181, 197 (2008) (recognizing that safeguarding voter confidence is part of the compelling interest that a State has in protecting the integrity and reliability of the electoral process); *Burson v. Freeman*, 504 U.S. 191,

199 (1992) (observing that State has a compelling interest in protecting voters from confusion and undue influence); *Eu v. San Francisco Cnty. Democratic Cent. Committee*, 489 U.S. 214, 231 (1989) (noting that the State indisputably has a compelling interest in preserving the integrity of its election process). The Supreme Court has "never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." *Munro*, 479 U.S. at 194-95.

In support of their challenge to Tennessee's statutes, Plaintiffs point to the *American Party* case, as well as to this Court's decision in *Graveline v. Benson*, 992 F.3d 524 (6th Cir. 2021). Br. Appellants, 12, 16. But neither case supports their challenge to Tennessee's ballot-access requirements, because neither case demonstrates that those laws are unconstitutional.

The holding in *American Party* was specifically considered in the *Green Party* case—the district court cited that case in support of its conclusion that "Supreme Court precedent supports a finding that Tennessee's 2.5% signature requirement is constitutional." *Green Party*, 2016 WL 4379150, at *32. The court noted that "in *American Party* . . . the Supreme Court held constitutional a one percent party-support requirement *that also imposed additional restrictions* on petition circulation . . . that Tennessee also does *not* impose." *Id.* (citing 415 U.S. at 777–80) (emphasis added).

20

The Sixth Circuit's decision in *Graveline* is also inapposite. *First*, *Graveline* involved Michigan's requirements for an independent candidate to be placed on the ballot—30,000 signatures to be collected over 180 days that must be submitted 110 days before the general election. *Id.* at 529. Plaintiffs did not challenge Tennessee's signature requirement for an independent candidate to be placed on the ballot—they challenged the requirements for a *party*. Further, in Tennessee a political party has three and a half years (or more than 1,200 days) to obtain the necessary signatures to become a recognized minor party. *See Green Party*, 2016 WL 4379150, at *27. By contrast, and according to Plaintiffs, the signature requirement of 2.5% of the voters from the last gubernatorial election requires 43,498 signatures. Br. Appellants, 6. Tennessee's ballot-access requirements, allowing 1,200 days for an entire political party to collect the necessary signatures, can clearly be distinguished from Michigan's requirements.

*Second*, Plaintiffs did not plead facts like those presented in *Graveline*. The plaintiff in *Graveline* demonstrated that its attempt to meet the requirements for ballot access by expending 1,000 hours of volunteer time and $38,000 had not been enough to meet the requirements of Michigan law. *Graveline*, 992 F.3d at 530. Plaintiffs here, as discussed above, made no such allegations. Without any specific factual support, Plaintiffs conclusorily alleged that it is virtually impossible to comply with Tennessee's ballot-access requirements. Complaint, R. 1 at 5. And they

vaguely alleged only that they had "failed in efforts in the past to comply" with Tennessee's requirements. *Id.* at 7.

**C.    Decisions from other States support the constitutionality of Tennessee's ballot-access statutes.**

Decisions regarding other, even more stringent, statutes from other States confirm the conclusion that Tennessee's signature requirement and 90-days-before-election filing deadline pass constitutional muster. In *Jenness v. Fortson*, 403 U.S. 431, 433 (1971), the Supreme Court upheld a Georgia statute that required minor-party candidates to submit a petition signed by at least 5% of eligible voters in the State, with only 180 days to obtain the signatures, before the minor party candidate was eligible for ballot access. And other federal courts have reached the same or a similar conclusion. *See Cowen v. Secretary of State of Georgia*, 22 F.4th 1227, 1232-33 (11th Cir. 2022) (holding that a 5% signature requirement with only 180 days to collect the signatures was constitutional); *Tripp v. Scholz*, 872 F. 3d 857, 870-71 (7th Cir. 2017) (holding that the cumulative effect of a 5% signature requirement, a notarization requirement, and a 90-day petitioning window did not violate the constitution); *Indiana Green Party*, No. 1:22-cv-00518, 2023 WL 5207924, at *3 (S.D. Ind. Aug. 14, 2023) (stating that "precedent compelled" holding that a 2% signature requirement with a June 30th deadline in the election year was constitutional).

## CONCLUSION

For the reasons stated, the judgment of the District Court should be affirmed.


Dated: December 13, 2024              Respectfully Submitted,

Jonathan Skrmetti
*Attorney General and Reporter*

J. Matthew Rice
*Solicitor General*

*/s/Zachary L. Barker*
Zachary L**.** Barker
*Senior Assistant Attorney General*

State of Tennessee
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
Zachary.Barker@ag.tn.gov

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's type-volume limitations because it contains 5,312 words, excluding portions omitted from the Court's required word count. This brief complies with the Court's typeface requirements because it has been prepared in Microsoft Word using fourteen-point Century Schoolbook font.

*/s/Zachary L. Barker*
Zachary L. Barker

## CERTIFICATE OF SERVICE

On December 13, 2024, I filed an electronic copy of this brief with the Clerk of the Sixth Circuit using the CM/ECF system.  That system sends a Notice of Docket Activity to all registered attorneys in this case.  Under Sixth Circuit Rule 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

_/s/Zachary L. Barker_
Zachary L. Barker

## DESIGNATION OF RELEVANT DOCUMENTS

Under Sixth Circuit Rule 28(b)(1)(A)(i), the Defendant-Appellees designate

the following district court documents as relevant to this appeal:

| Document | R. | PageID Nos. |
|---|---|---|
| Complaint | 1 | 1-10 |
| Memorandum Opinion | 20 | 81-92 |
| Order | 21 | 93 |